(No. 33178.—

THE PEOPLE *ex rel.* Elmer Goshern, Plaintiff in Error, *vs.* JOHN E. BABB, Sheriff, Defendant in Error.

*Opinion filed Sept. 23, 1954—Rehearing denied November 15, 1954.*

JOSEPH LUSTFIELD, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and KENNETH E. WILSON, all of Chicago, of counsel,) for defendant in error.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The plaintiff in error, Elmer Goshern, hereinafter called relator, filed a petition for a writ of *habeas corpus* in the criminal court of Cook County praying that he be released from the custody of the sheriff of Cook County, John E. Babb. The sheriff, for his return to the writ, alleged that the relator was in his custody by and under the authority of a Governor's warrant of rendition issued by the Governor of Illinois upon the requisition of the Governor of Indiana. A hearing was held, after which the court quashed the writ and remanded the relator to the custody of the sheriff. The relator prosecutes a writ of error to this court.

On September 16, 1953, the district attorney of the forty-sixth judicial district of Indiana filed an application with the Governor of Indiana requesting a requisition to the Governor of Illinois for the apprehension of the re-

lator. The Governor of Indiana thereupon issued a requisition to the Governor of Illinois for the extradition of the relator to Indiana, accompanying which was an affidavit by the prosecuting attorney quoting the statute which the relator was charged with violating and a copy of a complaint filed in Delaware County, Indiana, by the relator's former wife, Margaret Goshern. Said affidavit of the prosecuting attorney recited as follows:

"I hereby certify that the following is a true copy of Burns Indiana Statutes, 1942 Replacement, Section 10-1402, to-wit: 'Parents—Support of Children—Penalty—The Father, or, when charged by law with the maintenance thereof, the mother, of a child or children, under fourteen (14) years of age, living in this state, who, being able, either by reason of having means or by personal services, labor or earnings, shall willfully neglect or refuse to provide such child or children with necessary and proper home care, food and clothing shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the state prison or reformatory for not more than seven (7) years nor less than (1) year.'"

The complaint of Margaret Goshern, a copy of which was attached to the requisition, read, in part, as follows:

"Margaret Goshern swears she is informed and believes that Elmer V. Goshern on or about the 4th day of August, 1953 at and in the County of Delaware, State of Indiana, did then and there unlawfully wilfully and feloniously neglect and refuse to provide his minor children, to-wit: Charlotte Goshern, of the age of 15 years; John Goshern of the age of 14 years; Elmer Goshern of the age of 12 years; Opal Goshern of the age of 11 years, and Georgeann Goshern of the Age of 10 years, with the necessary and proper home care, food and clothing, the said minor children being residents of Delaware County, State of Indiana, and the said Elmer V. Goshern being then and there the father of said minor children and able by reason of having means and by personal services, labor and earnings to provide said children with the necessary and proper home care, food and clothing. Affiant further swears that she and the said Elmer V. Goshern were husband and wife and that they were legally divorced on the 27th day of April, 1949, in the Delaware Circuit Court, Delaware County, Indiana, and on said date the Judge of said court granted her the custody of said minor children and made an order against the said Elmer V. Goshern to pay the sum of $20.00 per week into the office of

the clerk of said court for the support of said minor children, which order is now and has been continuously since said date in full force and effect. Affiant further swears that she is informed and believes that on or about the 1st day of July, 1951, the said Elmer V. Goshern went to and into the state of Illinois, and that on or about the 4th day of August, 1953, the said Elmer V. Goshern who was then and there in the state of Illinois did then and there wilfully and unlawfully violate the order of said court by then and there failing to comply with the same and failing to continue the support of his said minor children in the state of Indiana, and that the aforesaid acts by the said Elmer V. Goshern, in the state of Illinois did then and there intentionally on the part of said Elmer V. Goshern result in the criminal offense of, failure to provide for his minor children in Delaware County in the state of Indiana."

The Governor of Illinois issued a warrant for the arrest and extradition of the relator upon the requisition of the Governor of Indiana. He was taken into the custody of the sheriff of Cook County by virtue of that warrant and thereafter filed a petition for writ of *habeas corpus* in the criminal court of Cook County, charging that the requisition showed on its face that no crime was committed in Indiana and that he was not a fugitive from the justice of Indiana.

The sheriff of Cook County for his return to the writ of *habeas corpus* alleged that the relator was in his custody by and under the authority of a Governor's warrant of rendition issued by the Governor of Illinois upon the requisition of the Governor of Indiana, that all the papers were legal, that the relator was a fugitive from justice, that he was charged with an offense against the laws of Indiana, and that he was the person named in the Governor's warrant. He therefore prayed that the writ of *habeas corpus* be quashed and the relator remanded to him to be delivered to the agent of the State of Indiana.

At the hearing upon this return the relator testified that he was not in the State of Indiana on August 4, 1953, nor was he in Indiana on July 1, 1951. He admitted that he and Margaret Goshern were married in 1936 and divorced on June 12, 1949, and that five children were

born of this marriage. He testified that in the last two weeks prior to the hearing he sent forty dollars to his former wife, and that the first information he had concerning an order for support of the minor children was when the warrant was sworn out against him. He stated he never saw a copy of the divorce decree, and nobody told him what it contained until he saw the certified copy.

Relator's former wife testified that the only money she had received since she and the relator were divorced was the forty dollars which she received in the two weeks prior to the hearing. She further testified that the children were now of the ages of seventeen, fifteen, thirteen, eleven, and ten.

In urging this court to reverse the judgment of the court below, the relator contends: (1) he was not substantially charged with a crime against the laws of the State of Indiana, and (2) he was not physically present in Indiana on or about the date upon which the offense with which he is charged is alleged to have been committed.

The basis of extradition is found in the Federal constitution which provides in section 2 of article IV that "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." Congress has enacted statutes implementing this constitutional provision, and the States all have legislation pertaining to certain matters not covered by Federal law on the subject. In Illinois we have the Fugitives From Justice Act. (Ill. Rev. Stat. 1953, chap. 60.) Section 2 of this act provides for a hearing after the arrest of the fugitive on a rendition warrant and before his delivery to an agent of the demanding State. This provision reads, in part, as follows: "The judge of the court in which such person is produced shall, in open court, inform the person appre-

hended of the cause of his arrest, the nature of the process, and inform him that if he claims (1), that the requisition and papers are not in regular and legal form; (2), that he is not the particular person named in the requisition, indictment or affidavit or in the warrant issued by the Governor; (3), that he is not substantially charged with a crime against the laws of the demanding state or (4), that he is not a fugitive from justice of the demanding state, i.e., that he was not physically present in the demanding state on or about the date upon which the offense with which he is charged is alleged to have been committed, he may have a writ of *habeas corpus* * * *." The relator here relies on the latter two enumerated defenses. This court said in *People ex rel. Carr* v. *Murray,* 357 Ill. 326, at page 332: "It has also been held that upon receipt of a requisition the Governor of the asylum State has two questions to pass upon: (1) Is the person demanded substantially charged with crime against the laws of the demanding state by indictment or affidavit before a magistrate? and (2) Is he a fugitive from the justice of that state? * * * The first of these questions is one of law and the second is one of fact."

We shall consider first whether the relator was substantially charged with a crime against the laws of the demanding State, Indiana. As noted above, this raises a question of law. See, also, *People ex rel. Eveland* v. *Harrell,* 404 Ill. 81, 85.

The relator argues that the complaint charges him with violating the terms of the divorce decree and not with the violation of a penal statute.

We are of the opinion that the complaint of Margaret Goshern, hereinbefore set out, charges the relator with the violation of an Indiana penal statute. The complaint charges that the relator "did then and there unlawfully, willfully and feloniously neglect and refuse to provide his minor children, to-wit: Charlotte Goshern, of the age of

seventeen years; John Goshern, of the age of fourteen years; Elmer Goshern, of the age of twelve years; Opal Goshern, of the age of eleven years, and Georgeann Goshern of the age of ten years, with the necessary and proper home care, food and clothing, the said minor children being residents of Delaware County, State of Indiana, and the said Elmer V. Goshern being then and there the father of said minor children and able by reason of having means and by personal services, labor and earnings to provide said children with the necessary and proper home care, food and clothing." This is a sufficient allegation to charge the relator with the violation of the Indiana statute, hereinbefore set out, which provides, in part, that the father "who being able, either by reason of having means or by personal service, labor or earnings, shall wilfully neglect or refuse to provide such child with necessary and proper home care, food and clothing, shall be deemed guilty of a felony * * *."

While the complaint does contain additional allegations regarding the divorce and the failure of the relator to comply with the terms of the divorce decree pertaining to support, such allegations are merely evidentiary facts which explain and form a particularization of the offense charged. They are surplusage and may be disregarded. *People* v. *Osborne*, 278 Ill. 104.

Technical rules of pleading applicable in criminal cases are not applicable for the purpose of testing the sufficiency of a pleading relied upon to justify the holding of a petitioner in *habeas corpus* for extradition. *People ex rel. Carr* v. *Murray*, 357 Ill. 326.

The relator also argues that the complaint and affidavit show that he is not charged with the crime of failure to support his minor children for the reason that the review of the divorce proceedings incorporated therein indicates that the custody of these minor children and the duty to support them was placed with his former wife. It has been

held in Indiana, however, that the fact the custody of children has been awarded to the mother in a divorce proceeding and that the father has been ordered to pay a certain amount toward their support does not relieve the father from the duty to support the children or bar a prosecution for his failure to do so under the statute herein considered. (*State* v. *Yocum*, 182 Ind. 478.) A father's obligation to support his children has been held to continue during his lifetime unless removed or shifted in some way recognized by law. *Vigo American Co.* v. *Kelley*, 82 Ind. App. 675.

We are, therefore, of the opinion that the relator is incorrect in his contention that he is not charged with a crime against the laws of the State of Indiana.

The final contention of the relator is that he was not physically present in Indiana on or about the date upon which the offense with which he is charged is alleged to have been committed. This raises a question of fact as to whether the relator was a "fugitive from justice" within the meaning of section 2 of the Illinois Fugitive From Justice Act.

The relator argues that the evidence is uncontradicted that he was not in Indiana on the date alleged in the complaint, August 4, 1953. He further says the complaint itself specifically states that he was in Illinois when the alleged offense was committed, the acts constituting the alleged offense being committed in Illinois.

It is clear that our statute requires the relator to be *physically* present in the demanding State on or about the date of the alleged offense, constructive presence not being sufficient.

This requirement of physical presence raises a particularly perplexing question in a case of this nature. For the crime of abandonment or nonsupport involves an act of omission rather than commission and is held to be committed where the act should have been done. (*State* v.

*Yocum,* 182 Ind. 478.) Thus, physical presence in the demanding State is not necessary for the perpetration of the crime, yet under our Fugitive From Justice Act physical presence of the accused in the demanding State is essential in order to allow extradition.

It was this type of situation which prompted the legislatures of some forty States, including the State of Indiana, to enact remedial legislation patterned in some manner upon the Uniform Criminal Extradition Act. Section 6 of that act provides: "The Governor of this state may also surrender, on demand of the Executive Authority of any other state, any person in this state charged in such other state in the manner provided in Section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom." *Handbook of the National Conference of Commissioners on Uniform State Laws,* page 322 (1936). The legislature of this State has been urged to adopt a similar section but to date no action has been forthcoming. See Harno, "Some Needed Changes," 1953 *Law Forum,* 425, 430.

The general rule in Illinois, and of the majority of other States when their statutes were similar to that of this State, is that if the accused can show he was not physically present in the demanding State on or about the date of the alleged criminal offense, he is not a "fugitive from justice" and may secure his release through *habeas corpus.* (*People ex rel. Gansler* v. *Meyering,* 352 Ill. 314; *People ex rel. Randolph* v. *Meyering,* 348 Ill. 17.) Of the many decisions of other jurisdictions which we have examined, we have found but one instance where it was held in a case like this that extradition could be had even though

the relator was not physically present in the demanding State. (*Ex parte Gornostayoff*, 113 Cal. App. 255.) The court did not give any reasons for its decision, and California later adopted the Uniform Criminal Extradition Act.

There has been one recognized exception to the strict Illinois rule, however. It has been held that even if it is shown that the person charged was not physically present in the demanding State on the date alleged in the indictment or complaint, still, if the evidence tends to show that the offense was committed at another time, and the accused was present in the demanding State at the time when it was committed, he may be extradited. (*People ex rel. Strobel* v. *Mulcahy,* 390 Ill. 233; *People ex rel. Thompson* v. *Lonie,* 374 Ill. 322; *People ex rel. Moore* v. *Wirz,* 349 Ill. 80.) In the *Wirz case,* this court said at page 82: "The prosecution is not, however, confined to the precise date alleged in the indictment as the date of the commission of the crime but may prove the true date on which the offense actually occurred. While the evidence is that the person charged with the offense was not within the State on the date it was alleged to have been committed, yet if the evidence tends to show that the offense was committed at another time and that the person charged was actually within the State at the time it was committed he would not be relieved from extradition." The crime charged is a continuing offense, and the date alleged in the complaint is immaterial so long as the proof shows that the offense was committed within the time covered by the Statute of Limitations. See *People ex rel. Randolph* v. *Meyering,* 348 Ill. 17, 19. Indiana statutory law provides a five-year limitation upon the prosecution of felonies of this nature. Burns Indiana Statute, Criminal Code, sec. 9-304.

In determining whether the foregoing exception is applicable to the instant case, it is necessary to keep in mind that the warrant of the Governor for the relator's arrest made a *prima facie* case against him and imposed upon him

the burden of proof to show he was not a fugitive from justice. *People ex rel. Buxton* v. *Jeremiah,* 364 Ill. 274.

The relator testified at the hearing that he was not present in the State of Indiana on August 4, 1953, nor on July 1, 1951. No evidence was adduced as to where he resided after the date of divorce, which was April 27, 1949. He did not deny that he was present in Indiana at any time after the divorce except to deny his presence in Indiana on the two days mentioned. For aught that appears in the record of the hearing, he may have been present in Indiana the day before or the day after the date charged in the complaint. It is uncontradicted that the relator, the father of five minor children whom he is obliged by law to support, did not contribute anything to their support from the date of the divorce decree until two weeks before the hearing on his *habeas corpus* petition, a period of over four years. This being the state of the record, we believe there is uncontradicted evidence tending to show the commission of the crime charged at times other than on August 4, 1953, the date alleged in the complaint, and the relator by merely denying he was present in Indiana on July 1, 1951, or August 4, 1953, has not sustained his burden of proving he was not present in Indiana at said other times. *People ex rel. Moore* v. *Wirz,* 349 Ill. 80.

The relator was substantially charged with a crime against the laws of Indiana, and he has failed to sustain his burden of proving that he was not physically present in Indiana on or about the date upon which the offense is alleged to have been committed within the meaning of section 2 of the Fugitive From Justice Act. Therefore, the judgment of the criminal court of Cook County remanding the relator to the custody of the sheriff of Cook County was correct and is affirmed. *Judgment affirmed.*